**Candido LOPEZ CARRILLO, Plaintiff,**

v.

**Anastacio SOTO AYALA, individually and as the Mayor of the Municipality of Culebra, Defendant.**

**Civ. No. RLA 88–1822 (JAF).**

United States District Court, D. Puerto Rico.

May 3, 1990.

Néctor Robles Abraham, Fajardo, P.R., for plaintiff.

Carlos E. Rodríguez Quesada, Director, Federal Litigation Div., Dept. of Justice, Héctor Rivera Cruz, Secretary of Justice, Com. of P.R., San Juan, P.R., for defendant.

## OPINION AND ORDER

FUSTE, District Judge.

Cándido López Carrillo, the plaintiff in this case, was removed from his position as Civil Defense Director of the Municipality of Culebra by order of defendant Anastacio Soto Ayala, Culebra's mayor. Mr. López seeks reinstatement[1] under 42 U.S.C. section 1983, alleging the decision to remove him was politically motivated and violative of his substantive and procedural rights under the first and fourteenth amendments. *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). Defendant now moves for summary judgment on the grounds that plaintiff was a "confidential" or "trust" employee and that political affiliation is an appropriate requirement for the position of Civil Defense Director.

The First Circuit has taken a two-step approach to the question whether political affiliation is an appropriate requirement for the effective performance of the certain job. *Cordero v. De Jesús–Méndez*, 867 F.2d 1, 9 (1st Cir.1989); *Jiménez Fuentes v. Torres Gaztambide*, 807 F.2d 236 (1st Cir.1987). The first step is to decide whether the position at issue relates to partisan political interests or concerns. The second—and often critical—step examines

the particular responsibilities of the position to determine whether it resembles a

policymaker, a privy to confidential information, a communicator, or some office holder whose function is such that party affiliation is an equally appropriate requirement. We would note that in conducting this inquiry, courts focus on the powers inherent in a given office, as opposed to the functions performed by a particular occupant of that office.

*Jiménez Fuentes v. Torres Gaztambide,* 807 F.2d at 42.

In *Cordero v. De Jesús–Méndez*, 867 F.2d 1, 12–13 (1st Cir.1989), the First Circuit had occasion to apply the above standard to the position of Municipal Civil Defense Director. In *Cordero*, several plaintiffs, one of whom served as Civil Defense Director for the town of Moca, were allegedly dismissed for political reasons. With respect to the Civil Defense Director plaintiff, the trial court entered a judgment n.o.v. in favor of defendants on the ground that the case law of the circuit compelled the finding that political affiliation was an appropriate requirement. The First Circuit affirmed, concluding that at least three provisions in the statute establishing Municipal Civil Defense Agencies, *see* 25 L.P. R.A. § 171*o*, warranted the use of political criteria in the selection of a Civil Defense Director:

The first is that the appointment is made by the Mayor. Although the Mayor's appointing power is circumscribed by the requirement that he consult with the Commonwealth Director before making the appointment and obtain the approval of the Municipal Assembly, the Mayor is the appointing official. This connotes the consideration of political factors by the Mayor.

The second significant provision is that the "municipal Director shall be directly responsible to the Mayor." It is axiomatic that except in rare instances, the wheels of government run smoother when the person in charge and the one responsible to him/her are of the same political party.

---

1. The complaint also contains a cause of action for damages, but this claim was ruled time-barred in a prior order. *See* Docket Document No. 11.

**152**

The third significant provision vests the mayor "with the authority to make such changes of personnel as he may deem *necessary or convenient* within the Municipal Civil Defense Agency." Under this provision, the Mayor has carte blanche authority to remove any of the Civil Defense personnel. This would seem to include the Director. Political reasons for removal would come within the meaning of "convenient." The authorizing statute also makes it clear that the Municipal Civil Defense Director formulates policy.... (Emphasis ours.)

*Cordero,* 867 F.2d at 12–13.

▌ We find *Cordero* controlling of the case at hand. The defendant herein, in addition to submitting other documents evidencing the potentially "political" nature of the civil defense directorship,[2] relies on the same statute found to be dispositive in *Cordero.*[3] We have examined plaintiff's opposition to the motion for summary judgment, along with the attachments thereto, and find nothing that significantly challenges, as a factual or legal matter, the First Circuit's characterization of the Defense Director's position. Therefore, finding no genuine issue of material fact as to the nature of this position, Fed.R.Civ.P. 56(e), we can only echo the *Cordero* court's holding that, due to the nature, duties and close relationship the Civil Defense Di-

rector must have with the Mayor, "[t]he first amendment rights of [the plaintiff] were not implicated when he was discharged...." *Id.* at 13.

▌ We also find that plaintiff, as a "confidential" employee, was not entitled to procedural protections under the fourteenth amendment. *See* 3 L.P.R.A. section 1350; *Cordero,* 867 F.2d at 9; *Laureano–Agosto v. Garcia–Caraballo,* 731 F.2d 101, 103 (1st Cir.1984). Although at least one document in the record, dated in 1978, appears to classify plaintiff as a "career" employee, we agree with defendant that this classification is completely at odds with the statutory characterization of the civil defense directorship discussed above which, in the court's view, places plaintiff within the definition of "confidential employee" under Puerto Rico law. *See* 3 L.P.R.A. section 1350. Moreover, there is no indication that plaintiff's "career" classification was entered in accordance with the procedures under Puerto Rico's Personnel Act. *See Kauffman v. Puerto Rico Telephone Co.,* 841 F.2d 1169 (1st Cir.1988) (public employees hired for career position in violation of Puerto Rico Personnel Act could not claim any property interest in continued employment.) Thus, we discount this evidence in favor of the numerous documents submitted by defendant indicating

---

2. For instance, defendants point out that plaintiff, in his capacity as Civil Defense Director, has served as acting mayor in the elected mayor's absence.

3. Title 25 of the Laws of Puerto Rico Annotated, section 171o, states in pertinent part:

All the municipalities of the Commonwealth of Puerto Rico are hereby directed to establish a Municipal Civil Defense Agency, in accordance with the guidelines that the Commonwealth Director may establish for such purposes, as provided in section 171e(N)(i) of this title.

The Municipal Civil Defense Agency shall be directed by a Municipal Civil Defense Director appointed by the Mayor in consultation with the Commonwealth Director. The appointment of the Municipal Director shall require approval by the Municipal Assembly.

The Municipal Director shall be directly responsible to the Mayor. However, the Municipal Director shall organize and administer the Municipal Civil Defense Agency in accord-

ance with the guidelines of the Commonwealth Director. However, the Mayor is vested with the authority to make such changes of personnel as he may deem necessary or convenient within the Municipal Civil Defense Agency.

....

Each Municipal Civil Defense Agency shall prepare and keep up-to-date a Municipal Plan of Operations for the Control of Emergencies and Disasters and shall send a copy thereof to the Commonwealth Director. The Municipal Plan shall be coordinated, insofar as possible, with the Commonwealth Plan.

Each Municipal Civil Defense Agency may prescribe, amend and revoke such regulations and may issue, amend and rescind such orders as may be necessary to put into execution the measures and activities of civil defense within the municipality concerned. The said regulations and orders, their amendments, revocation or rescission shall take effect as soon as they are approved by the Commonwealth Director.

that the position of Civil Defense Director was a "confidential" one.[4]

By virtue of the above determinations, summary judgment is GRANTED in favor of the defendant and the complaint is now DISMISSED.

IT IS SO ORDERED.

---

**4.** Plaintiff's argument that only the Governor, and not the Mayor, has authority to fire a Municipal Civil Defense Director, *see Báez Cancel v. Alcalde Mun. de Guaynabo,* 100 D.P.R. 982 (1972), is also without merit, as it relies on a statute that was repealed before plaintiff took office. *Compare* Art. 8, 25 L.P.R.A. § 137 (repealed) (granting the Governor of Puerto Rico supervisory powers over the Municipal Civil Defense Directors) with 25 L.P.R.A. § 171o (shifting said supervisory powers from the Governor to local Mayors).